**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------

EQUAL VOTE AMERICA CORP., and                 Case No.:**1:19-cv-02346**
LEWIS Y. LIU

                               Plaintiffs,

                                           COMPLAINT

     -against-

MITCH McCONNELL in the
capacity of the Senate Majority
Leader, and
CHARLES GRASSLEY in the
capacity of the Chairman of the
Senate Judicial Committee

                               Defendants
---------------------------------------------------------

       COME NOW Plaintiffs in the above styled action and respectfully show this Honorable Court as follows:

### **THE PARTIES**

That the first Plaintiff is a Not-for-Profit Corporation with the mission of educating the general public on voting rights, and promoting voter participation in the election process without supporting any particular political party or candidate. In this case, Equal Vote America Corp. represents Lewis Y. LIU, who is a registered voter in the state of New York.

The following individuals are named as Defendants because they had power to control the Senate confirmation process for presidential nominations to fill vacancies as mandated by the Constitution:

1.  Mitch McConnell is the current Majority Leader in the Senate and has been since 2015, and

2.  Charles Grassley was then the Chairman of the Senate Judicial Committee during the period this case was concerned.

## THE COMPLAINT

1. On March 16, 2016 President Barack Obama nominated Merrick Garland, the Chief Judge of the United States Court of Appeals for the District of Columbia Circuit, to fill an open seat on the Supreme Court following the death of Justice Antonin Scalia.

2. The founding fathers in drafting the Constitution established the principle of Separation of Powers which provides "checks" and "balances" among the three branches of government, and requires separate "authorities" and "duties" to be performed by each branch. Presidential nomination with "Advice and Consent" by the Senate has been a well-established due process that reflects such principle, and requires discharge of duty by both the President and the Senate, respectively.

3. However, the Republican-controlled Senate, led by Mitch McConnell, the Senate Majority Leader, and Chuck Grassley, then the Chairman of the Senate Judicial Committee, completely ignored the Garland nomination and refused to conduct the long-standing confirmation process that includes open hearing, committee vote and floor vote for all presidential nominations from both parties.

4. By refusing to conduct confirmation process the Defendants blatantly violated the constitutional principle of Separation of Power, the Executive Power Clause in Article II § 1, the Appointment Clause Article II § 2, and the Due Process protection for the Office of Presidency, Chief Judge Garland, and for all voters who considered judicial nomination as one of the most important factors in casting their votes in the 2012 Election.  The Defendants also betrayed our founding fathers' intention and neglected a duty that entrusted by all Americans and paid for by all taxpayers.

5. Therefore, the refusal of confirmation process of Chief Judge Garland has
   1) violated Plaintiff's Citizen Privileges guaranteed by the Article IV § 2,
   2) debased Plaintiff's Freedom of Speech guaranteed by the First Amendment,
   3) violated Plaintiff's Due Process guaranteed by the Fifth Amendment,
   4) demeaned Plaintiff's voting right under § 2 of the Fourteenth Amendment.

6. The redress Plaintiff is seeking is for the Court to review and declare that the Defendants' refusal of confirmation process to a presidential nomination is unconstitutional.

### TABLE OF CONTENTS

**Page**

Parties to the Proceedings ................................................................................................. 1

The Compliant ................................................................................................................... 2

Table of Contents .............................................................................................................. 3

Table of Authorities .......................................................................................................... 4

Jurisdiction ........................................................................................................................ 5

Constitutional and Statutory Provisions Involved ........................................................... 5

Statement of Facts ............................................................................................................. 6

The Defendants Have Violated the Constitution ............................................................ 12

    Violation of Article II § 1 Clause 1 – The Executive Power Clause ........................... 12

    Violation of Article II § 2 Clause 2 – The Appointment Clause   .............................. 13

    Disregard of the Constitutional Doctrine of Separation of Powers  ........................... 14

    Disregard of the Constitutional Doctrine of Judicial Independence  .......................... 15

    Violation of a Long-standing Due Process ................................................................. 17

    Betrayal of the Founding Fathers' Intent ................................................................... 18

    An Unprecedented Deliberate Dereliction of Duty .................................................... 18

    Washington's Warning Against Partisan Politics ....................................................... 20

The Defendants Have Violated Plaintiff's Constitutional Rights ................................... 22

    Violation of Article IV § 2 - Equal Privileges ........................................................... 22

    Violation of Freedom of Speech – The First Amendment .......................................... 23

    Violation of Due Process – The Fifth Amendment .................................................... 23

    Violation of Equal Voting Right – The Fourteenth Amendment § 2 .......................... 24

The Plaintiff Has the Standing to Sue ............................................................................ 25

The Court Has the Power and Duty to Redress  ............................................................. 28

Congress Has the Power and Duty to Rectify  ............................................................... 29

Conclusion ...................................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Dickerson v. United States,* 530 U.S. 428 (2000) ............................................................... 17

*Cotting v. Godard*, 183 U.S. 79 (1901) ............................................................................. 29

*Marbury v. Madison*, 5 U.S. 137 (1803) ............................................................................ 29

*Miranda v. Arizona,* 384 U.S. 436 (1966) ........................................................................ 17

*Morrison v. Olson* 487 U.S. 654 (1988) ........................................................................... 15

*Paul v. Davis*, 424 U.S. 693 (1976) .................................................................................. 26

*Talk America, Inc. v. Michigan Bell Telephone Co.* 564 U.S. 50 (2011) ........................... 15


**Statutes**                                                                                                 **Page**

28 U.S.C. § 2403(a) .......................................................................................................... 5


**Constitutional Provisions**

U.S. Const. Amend. I .............................................................................................. *passim*

U.S. Const. Amend. V ............................................................................................ *passim*

U.S. Const. Amend. XIV ........................................................................................ *passim*

U.S. Const. Article I § 1 ....................................................................................... 13, 29

U.S. Const. Article I § 5 ............................................................................................... 29

U.S. Const. Article I § 6 ............................................................................................... 22

U.S. Const. Article II § 1 ........................................................................................ *passim*

U.S. Const. Article II § 2 ........................................................................................ *passim*

U.S. Const. Article III § 1 ..................................................................................... 13, 29

U.S. Const. Article III § 2 ............................................................................................. 29

U.S. Const. Article IV § 2 ...................................................................................... *passim*

U.S. Const. Article VI Par. 2 ................................................................................... 22, 29

U.S. Const. Article VI Par. 3 ................................................................................... 22, 29

## JURISDICTION

The lead Plaintiff is a resident and registered voter in the State of New York, and the complaint concerns a constitutional question. This Court has jurisdiction under 28 U.S.C. § 2403(a) with respect to a constitutional question.


## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

U.S. Const. Article I § 5 provides in pertinent part:
- Each House may determine the Rules of its Proceedings.

U.S. Const. Article I § 6 provides in pertinent part:
- The Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States.

U.S. Const. Article II § 1 provides in pertinent part:
- The executive Power shall be vested in a President of the United States of America. He shall hold his Office during the Term of four Years.

U.S. Const. Article II § 2 provides in pertinent part:
- He shall have Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur; and he shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court.

U.S. Const. Article III § 1 provides in pertinent part:
- The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.

U.S. Const. Article III § 2 provides in pertinent part:
- The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States… to Controversies to which the United States shall be a Party.

U.S. Const. Article IV § 2 provides in pertinent part:
- The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.

U.S. Const. Article VI. Par. 2 provides in pertinent part:
- This Constitution, and the Laws of the United States … shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. Article VI. Par. 3 provides in pertinent part:

- The Senators and Representatives before mentioned, and the Members of the several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution

U.S. Const. Amend. I. provides in pertinent part:
- Congress shall make no law … or abridging the freedom of speech … or the right of people … and to petition the Government for a redress of grievances.

U.S. Const. Amend. V. provides in pertinent part:
- No person shall be … nor be deprived of life, liberty, or property, without due process of law.

U.S. Const. Amend. XIV.  § 2. provides in pertinent part:
- But when the right to vote at any election for the choice of electors for President and Vice President of the United States, … or in any way abridged.

U.S. Const. Amend. XIV.  § 5. provides in pertinent part:
- The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article.

## STATEMENT OF FACTS

1. On November 4, 2008, Senator Obama was elected President with 52.9% of popular votes and 365 electoral votes. November 6, 2012, President Obama was re-elected to a second term with 51.1% of popular votes and 332 electoral votes.

2. On September 17, 1986, Circuit Judge Antonin Scalia nominated by President Reagan was confirmed 98-0 by the Senate to the Supreme Court. On February 13, 2016, Justice Scalia passed away.

3. Justice Scalia's death was the seventh occasion since 1900 in which a seat on the Supreme Court of the United States became vacant during a presidential election year.

   1) On March 13, 1912 President William Taft (a Republican) nominated Mahlon Pitney to succeed John Marshall Harlan, who died on October 14, 1911. The Republican-controlled Senate confirmed Pitney five days later on March 18, 1912, by a vote of 50-26.

   2) On January 28, 1916, President Woodrow Wilson (a Democrat) nominated Louis Brandeis to replace Joseph Rucker Lamar, who died on January 2, 1916; the Democratic-controlled Senate confirmed Brandeis on June 1, 1916, by a vote of 47 to 22, 125 days later.

3)  On June 10, 1916 Charles Evans Hughes resigned from the Court to run for president as a Republican.   On July 14, 1916, President Wilson nominated John Hessin Clarke who was confirmed unanimously ten days later.

4)  On February 15, 1932, President Herbert Hoover (a Republican) nominated Benjamin Cardozo to succeed Oliver Wendell Holmes, who retired on January 12, 1932.  A Republican-controlled Senate confirmed Cardozo by a unanimous voice vote nine days later on February 24, 1932.

5)  On January 4, 1940, President Franklin Roosevelt (a Democrat) nominated Frank Murphy to replace Pierce Butler, who died on November 16, 1939; Murphy was confirmed 12 days later by a heavily Democratic Senate on January 16, 1940 through a voice vote.

6)  On November 30, 1987, President Ronald Reagan (a Republican) nominated Justice Anthony Kennedy to fill the vacancy created by the retirement of Lewis Franklin Powell.  A Democratic-controlled Senate confirmed Kennedy on February 3, 1988, by a vote of 97 to 0, 65 days later.

4.  There were two instances in the 20th Century where presidents were unable to nominate and confirm a successor for an open seat during an election year.  But neither reflected a practice of leaving a seat open on the Supreme Court until after the election.

1)  On September 7, 1956, Sherman Minton announced his intent to retire in a letter to President Dwight D. Eisenhower, and he served until October 15, 1956.  With the Senate already adjourned, Eisenhower made a recess appointment of William J. Brennan to the Court shortly thereafter; Brennan was formally nominated to the Court and confirmed in 1957 in near-unanimous vote, with only Senator McCarthy voting against him.

2)  In 1968, President Lyndon B. Johnson nominated Abe Fortas, who was already an Associate Justice, to succeed Chief Justice Earl Warren, but the Fortas nomination encountered a bipartisan filibuster.  That filibuster prompted Homer Thornberry, whom Johnson nominated to succeed Fortas as an Associate Justice, to withdraw from consideration in October 1968. The failure to

confirm Fortas as the Chief Justice did not leave the Court short-handed, because Chief Justice Earl Warren remained on the bench.

5.   Only hours after Justice Scalia's death was announced and more than a month before Obama nominated Garland, Senate Majority Leader Mitch McConnell, one of the Defendants declared:

*Of course, the American people should have a say in the court's direction. It is a president's constitutional right to nominate a Supreme Court justice, and it is the Senate's constitutional right to act as a check on the president and withhold its consent.*

The 11 Republican members of the Senate Judiciary Committee signed a letter saying they had no intention of consenting to any nominee from President Obama. No proceeding of any kind was held on Garland's appointment.

6.   On March 16, 2016 President Barack Obama nominated Merrick Garland, the Chief Judge of the United States Court of Appeals for the District of Columbia Circuit, to fill Scalia's seat on the Supreme Court. It was the first occasion since 1895 a Democratic President's nominee for the Supreme Court faced a Republican-controlled Senate.

   1)   In 1895, a Senate Republican majority confirmed President Grover Cleveland's (a Democratic) nomination of Rufus Wheeler Peckham.

   2)   Conversely, in February 1988, during an election year, the Democratic-controlled Senate confirmed Anthony Kennedy, nominated by President Ronald Reagan (a Republican) in November 1987 to replace Lewis Franklin Powell who was nominated by Richard Nixon.

   3)   On October 9, 1990, the Democratic-controlled Senate (55–45) confirmed President George H. W. Bush's appointee, David Souter, 90–9. On October 15, 1991, that same Senate confirmed Clarence Thomas, 52–48, who replaced Justice Thurgood Marshall.

7.   Widely regarded as a moderate, Garland had been praised in the past by many Republicans, including influential senators such as Orrin Hatch of Utah.  In fact, Garland was confirmed (76-23) to the U.S. Court of Appeals for the District of Columbia by a Republican-controlled Senate on March 19, 1997.

The majority of Republican senators voted to confirm Garland, including Senators John McCain, and Orrin Hatch. All of the 23 "no" votes came from Republicans based "on whether there was even a need for an eleventh seat" on the D.C. Circuit. In 2010, Obama interviewed Garland for a Supreme Court vacancy ultimately filled by Elena Kagan. At the time, Senator Hatch said that he had urged Obama to nominate Garland as "a consensus nominee" who would win Senate confirmation.

8. In April 2016, a letter signed by sixty-eight of Garland's former law clerks was delivered to Senate leaders. The Washington Post summarized the letter as painting "a familiar portrait of Garland as a careful judge, a hardworking public servant and a devoted family man." The former clerks wrote:

*There are not many bosses who so uniformly inspire the loyalty that we all feel toward Chief Judge Garland. Our enthusiasm is both a testament to his character and a reflection of his commitment to mentoring and encouraging us long after we left his chambers.*

9. Republican Senator from Arizona Jeff Flake said in March 2016 that Garland should not be confirmed unless Hillary Clinton wins the 2016 presidential election, but Garland should be confirmed in the Senate's lame-duck session if Clinton wins because he is less liberal than any nominee Clinton might put forward. Orrin Hatch echoed this sentiment, saying that he was "open to resolving this [Garland's nomination after a Clinton win] in a lame duck [session in December]."

10. By early April, two Republican Senators, Jerry Moran from Kansas and Lisa Murkowski from Alaska, after weeks earlier expressing support for proceeding with hearings as a part of the nomination process, had reversed their positions, saying that they now opposed hearings on Garland's nomination. Two other Republican Senators, Mark Kirk of Illinois and Susan Collins of Maine, expressed their support for hearings and an up-or-down vote, with Collins also supporting Garland's nomination. Some Republicans, including Ted Cruz and John McCain, even suggested that the Senate might not confirm any nominee to replace Scalia if Democrats retain control of the presidency.

11. On May 2, eight former Solicitor General of the United States endorsed Garland as "superbly qualified", including Republicans Paul Clement, Gregory G. Garre, Theodore Olson, and Ken Starr.

12. On June 21, the American Bar Association's Standing Committee on the Federal Judiciary granted Garland its "well-qualified" rating. Commenting on Judge Garland's integrity, the ABA noted:

> *Most remarkably, in interviews with hundreds of individuals in the legal profession and community who knew Judge Garland, whether for a few years or decades, not one person uttered a negative word about him.*

13. Over 150,000 people signed a White House petition asking President Obama to independently appoint Garland to the Supreme Court, espousing the theory that the Senate had waived its advice and consent role. President Obama did not do so because he believed such recess appointment would be inconsistent with the Constitution.

14. Scalia's death left the court with eight judges for a majority of its 2015 term and the beginning of its 2016 term, and the vacancy was the second-longest since 1900. With the vacancy persisting for some time, the Court showed a reluctance to accept new cases. The Court's slow pace in accepting new cases reflected "an increased cautiousness considering the real possibility of 4–4 deadlocks on anything ideologically divisive." From the time of Scalia's death in late February 2016 until the first week of April 2016, the Court accepted only three cases, none likely to be controversial. By contrast, over the previous five years the Court took up an average of eight cases over the same period.

15. The Merriam-Webster online dictionary defines "Shall" as follows:



16. The Merriam-Webster online dictionary defines "Advice" as follows:



17. The Merriam-Webster online dictionary defines "Consent" as follows:



## THE DEFENDANTS HAVE VIOLATED THE CONSTITUTION

1. As aforementioned, right after the death of Scalia, Republican Senators, chiefly the Defendants announced that they would hold neither committee hearing nor floor vote on any potential nomination during President Obama's last year in office.

2. The Defendants' action represented ominous violations of multiple constitutional provisions, blatant disregard of constitutional doctrines of Separation of Power and Judicial Independence from party politics, brazen betrayal of the framers' intent, unprecedented premeditated dereliction of duty, and extreme partisan abuse of power.

Violation of Article II § 1 Clause 1 – The Executive Power Clause

3. The Defendants claimed voters should decide the direction of court in election year to justify their refusal to conduct the long-standing confirmation process for the Garland nomination. This argument must be repudiated on multiple accounts:

    1) It clearly violated Article II § 1 Clause 1 which provides the presidential power with a four-year term. If this argument is allowed to stand, it effectively reduces presidential term to three years.

    2) Textually, there is no provision in the Constitution that a sitting president loses power in last year.

    3) It is obviously disingenuous because the majority of voters have made their decision in 2012.

    4) It essentially subverts and overturns the will of the majority voters in the 2012 Election.

4. As aforementioned, the Garland nomination was the 7th occasion since 1900 in which a Supreme Court vacancy occurred in a presidential election year. In all previous six occasions, presidential nominees of both parties were accorded a confirmation process and confirmed between 5 and 125 days, including Justice Anthony Kennedy nominated by President Reagan (Republican) and confirmed by a Democratic-controlled Senate in 1988.  In addition, a Senate Republican majority confirmed President Cleveland (a Democrat) nomination of Rufus Wheeler Peckham in 1895.

5. On March 9, 2016 a group of almost 250 prominent corporate lawyers urged the Senate leadership to hold confirmation process on the Garland nomination, citing nearly one third of all presidents have nominated a justice in an election year who was eventually confirmed. The letter, organized by the Lawyers' Committee for Civil Rights Under Law, also expressed concern about the "profound effect" about the effects of an under-staffed Court on the national economy, particularly in close cases.

*When a vacancy on the court arises, the Constitution is clear ... Article II, § 2 states that the President 'shall nominate, and by and with the advice and consent of the Senate, shall appoint ... judges of the Supreme Court' ... Though the Senate may ultimately choose not to consent to the president's nominee, it would be unprecedented for the Senate to refuse to perform its 'advice and consent' role in this context. Not only does <u>the Constitution direct the sitting president to nominate an individual to fill a vacancy on the court no matter whether it is an election year</u>, nearly one third of all presidents have nominated a justice in an election year who was eventually confirmed.*

<u>Violation of Article II § 2 Clause 2 – The Appointment Clause</u>

6. Throughout the Constitution, the word "*Shall*" was used consistently in defining the power and duty for each of three branches of government.

   *1)* Article I § 1: *All legislative Powers herein granted <u>shall</u> be vested in a Congress of the United States.*

   *2)* Article II § 1: *The executive Power <u>shall</u> be vested in a President of the United States of America.*

   *3)* Article III § 1: *The judicial Power of the United States <u>shall</u> be vested in one supreme Court.*

7. It is abundantly clear that the founding fathers choose the word "*Shall*" to express authority, command, mandate, and power – as defined in the Webster dictionary - in the Constitution, the supreme law of the Union. Hence, a constitutional clause with "*Shall*" <u>textually</u> demands compliance and cannot be ignored and brushed aside arbitrarily for political expedience.

8. Article II § 2 Clause 2 with the word "*Shall*" <u>textually</u> mandates that it is a constitutional duty to appoint the listed key positions in a two-step process performed by President and the Senate.

   1) First, it is President's role and duty to nominate someone for the listed positions.

   2) Secondly, it is the Senate's role and duty to provide "Advice and Consent" as a matter of process.

*He <u>shall</u> have Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur; and he <u>shall</u> nominate, <u>and by and with the Advice and Consent of the Senate</u>, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court…*

<u>Disregard of the Constitutional Doctrine of Separation of Powers</u>

9.  The two-step Appointment process reflects the constitutional principle of Separation of Powers, for which Justice Scalia was well known to hold a strong view. Whenever a judicial vacancy occurs, the Constitution assigns the President the power and duty to nominate a well-qualified candidate, and then assigns the Senate the power and duty to promptly process such presidential nomination with a final up-and-down vote to fill such vacancy. Therefore, the Defendants' refusal to perform the well-established long-standing confirmation process...

   1)  violated the constitutional doctrine of the Separation of Powers which not only provides "checks" and "balances" among the three branches of government, but also requires separate "authorities" and "duties" to be performed by each branch.

   2)  disrespected the Office of Presidency whose occupant was duly elected twice by a clear majority of the country. If an executive power such as presidential nomination can be ignored as if it had never happened, then it is no longer a "power" as defined by the Constitution.

   3)  disrespected the Senate which has well-established long-standing practices to perform its duties mandated by the Constitution in services to and paid for by all Americans.

   4)  disrespected the Supreme Court by deliberately keeping the vacancy for almost a year, the longest in our country's history, hence treating the highest court as personal toys or political tools rather than a government branch funded by all taxpayers and mandated by the Constitution.

10. As aforementioned, <u>on March 7, 2016, a group of 356 law professors and other legal scholars</u> argued that Senate Republicans' refusal to consider any Obama nominee was a …

"*preemptive abdication of duty*" that "*is contrary to the process the framers envisioned in Article II, and threatens <u>to diminish the integrity of our democratic institutions and the functioning of our constitutional government</u>.*"

11. According to a <u>Weekly Standard op-ed dated February 18, 2016</u>, Justice Scalia believed separation of powers and federalism were the most important parts of the Constitution: "*Without those checks on accumulated government power, individual rights would never be safe*". In *Morrison v. Olson* 487 U.S. 654 (1988) Justice Scalia in his lone dissent wrote that the Court decision not only invaded the president's executive powers, but also diffused accountability, allowing runaway partisan prosecutions for which nobody need answer to the voters. In *Talk America, Inc. v. Michigan Bell Telephone Co.*564 U.S. 50 (2011) Justice Scalia wrote:

*When an agency promulgates an imprecise rule, it leaves to itself the implementation of that rule, and thus the initial determination of the rule's meaning ... deferring to an agency's interpretation of its own rule encourages the agency to enact vague rules which give it the power, in future adjudications, <u>to do what it pleases</u>.*

12. It is really the height of irony and hypocrisy that the Defendants and their Republican colleagues who always claimed to identify with Justice Scalia's judicial views have completely disregarded Justice Scalia's warning and did exactly what he denounced, "<u>*to do what it pleases*</u>".


<u>Disregard of the Constitutional Doctrine of Judicial Independence</u>

13. The founding fathers also established the constitutional principle of Judicial Independence, which requires both the President and the Senate to follow a consistent confirmation process that is nonpartisan, open and fair to every nominee from presidents of both parties. By completely refusing to conduct a long-standing confirmation process for the Garland nomination explicitly because President Obama was from a different political party, the Defendants violated the constitutional principle of Judicial Independence. All 100 senators are free to vote their conscience for or against any given presidential nomination, but such vote must come after a confirmation process that is fair,

open, robust and thorough. Such confirmation process is one of the key foundations to preserve judicial independence.

14. Furthermore, the actions and comments taken by the Defendants and their Republican colleagues in the Senate showed they believed that only nominees of their party may be confirmed to the Court, thereby making the Court a partisan arm and destroying its judicial independence. No party should be allowed to gain monopoly on the Court through manipulating the confirmation process.

15. The Defendants in a bad-faith equated doing-nothing to withholding-consent. If such obstructionist argument is allowed to stand, and if the Defendants' egregious violation of Constitution is not held accountable, the following scenarios will be bound to play out in a matter of time:

   1) A Republican-controlled Senate will feel free to completely ignore all future Democratic presidential nominations and appointments because not only many Republican senators already indicated so during the Garland nomination, but also they now see they can violate multiple constitutional principles and disregard their constitutional duty with impunity.

   2) A Democratic-controlled Senate will therefore feel compelled in return to ignore all future Republican presidential nominations and appointments.

   3) A Republican president will in turn ignore or even sabotage laws passed by a Democratic-controlled Congress, such as the Affordable Care Act (ACA) a.k.a. Obamacare.

   4) A Democratic president will in turn ignore laws passed by a Republican-controlled Congress.

   5) Eventually, a president will ignore a court order he does not like by claiming the judge is nominated by the other party or a member of a particular ethnic group which he has already attacked. We have witnessed such verbal assaults to judicial independence, and Chief Justice John Roberts has rightfully rebuked.

   6) With all the above willful attacks on the institutions that have been key parts of our constitutional democracy, sooner or later, our country will no longer have the rule of law.

16. On March 10, 2016, the Democratic attorneys general of 19 states, Puerto Rico, and the District of Columbia released a letter to Obama and Senate leadership in both parties calling for prompt Senate action on the president's nominee, "the states and territories have a unique and pressing interest in a full and functioning Supreme Court" and that refusal to consider a nominee would "undermine the rule of law and ultimately impair the functioning of state governments."

17. In March 2016, John Joseph Gibbons (nominated by a Republican president) and Patricia Wald (nominated by a Democratic president), the former chief judges of the Third Circuit and D.C. Circuit, respectively, warned that the Senate's refusal to act on a Supreme Court nomination…

"*would set a dangerous precedent, and <u>invite attempts to extend it to other situations where the Executive and the Legislative branches are in political conflict with one another.</u>*"

<u>Violation of a Long-standing Due Process</u>

18. Chief Justice Rehnquist's opposition to the decision of *Miranda v. Arizona*, 384 U.S. 436 (1966) was well-documented. However, on June 27, 2000, writing for the Court in *Dickerson v. United States*, 530 U.S. 428 (2000), Chief Justice Rehnquist declared there was no such justification to overturn *Miranda* because "*Miranda* has become embedded in routine police practice to the point where the warnings have become part of our national culture." By the same logic and principle, the refusal by the Defendants to conduct a well-established long-standing confirmation process is unconstitutional.

19. As aforementioned, all presidential nominees of both parties to the Supreme Court prior to Judge Garland have received a confirmation process from the Senate. Such well-established long-standing bi-partisan practice of confirmation process for presidential nomination not only complied with the Constitution, but also established a Due Process for the Office of Presidency, all nominees, and for the integrity of the Court. There was no justification for the Defendants to arbitrarily suspend such well-established long-standing Due Process for political expedience. For anyone who claims to be institutionalists, the actions and comments by the Defendants and their Republican colleagues

reflected a pure partisan power play and complete disregard of a well-establish long-standing Due Process in the Senate mandated by the Appointment Clause.

Betrayal of the Founding Fathers' Intent

20. For anyone who claims to be textualist, there is neither textual provision that allows the Senate to completely ignore a presidential nomination as if it has never happened, nor textual provision that allows the Senate to ignore presidential nomination during any period of a 4-year term.

21. For anyone who claims to be originalist, the founding fathers certainly never expect the Senate to rubber-stamp any particular presidential nomination, nor did they intend for the Senate to neglect its duty in the Appointment Clause. In drafting the Constitution, they clearly required the Senate to provide Advice and Consent, in which (1) Advice has evolved to be a vetting process of hearing, question, and debate, and (2) Consent has evolved to be a voting process for all senators to express approval or disapproval of a presidential nomination.

22. On March 3, 2016 another group of scholars of history, politics, and law wrote to Obama to "express our dismay at the unprecedented breach of norms by the Senate majority in refusing to consider a nomination for the Supreme Court made by a president with eleven months to serve in the position."

*We believe that the Framers' construction of the process of nominations and confirmation to federal courts, including the Senate's power of "advice and consent," does not anticipate or countenance an obdurate refusal by the body to acknowledge or consider a president's nominee, especially to the highest court in the land. The refusal to hold hearings and deliberate on a nominee at this level is truly unprecedented and, in our view, dangerous... The Constitution gives the Senate every right to deny confirmation to a presidential nomination. But denial should come after the Senate deliberates over the nomination, which in contemporary times includes hearings in the Judiciary Committee, and full debate and votes on the Senate floor.*

An Unprecedented Deliberate Dereliction of Duty

23. By refusing to conduct the well-established long-standing confirmation process that includes committee hearings, committee votes, floor debates and up-and-down floor votes for the Garland

nomination, the Defendants committed a gross dereliction of its obligation and duty demanded upon the Senate by the Constitution. "Advice and Consent" is part of the duty the Senate must perform with care, rather than an option that can be skipped at the mercy of a couple of individuals.

24. On February 24, 2016, a group of U.S. constitutional-law scholars wrote in an open letter that (1) it would be "unprecedented" for the Senate to fail to consider a Supreme Court nominee, (2) "would leave a vacancy that would undermine the ability of the Supreme Court to carry out its constitutional duties", (3) the Senate's constitutional duty to 'advise and consent'—the process that has come to include hearings, committee votes, and floor votes—has no exception for election years, and (4) in America's history, there have been 24 presidential nominees in the last year of a term, all were accorded the confirmation process by the Senate, and 21 of these nominees were confirmed.

25. On March 7, 2016, another group of 356 law professors and legal scholars urged the Senate "to fulfill your constitutional duty to give President Obama's Supreme Court nominee a prompt and fair hearing and a timely vote", and warned that the Defendants' refusal to consider any Obama nominee was a

> "*preemptive abdication of duty" that "is contrary to the process the framers envisioned in Article II, and threatens to diminish the integrity of our democratic institutions and the functioning of our constitutional government*."

26. In March 2016, former Utah governor Jon Huntsman Jr., a Republican, and former Connecticut senator Joseph Lieberman, an independent, both co-chairs of the group No Labels, wrote that:

> *There is no modern precedent for the blockade that Senate Republicans have put in place. Even highly-contentious nomination battles in the past, including those over Robert Bork and Justice Clarence Thomas, followed the normal process of hearings and an up-or-down vote. Leaving the current blockade in place could leave a seat on the Court vacant for the remainder of this term and perhaps the next as well, which could leave major cases in limbo until 2018. That is simply not acceptable. We cannot let today's crisis of leadership turn into a full-blown constitutional crisis.*

27. Law professors Robin Bradley Kar and Jason Mazzone, in a May 2016 study published in the NYU Law Review Online, called the situation "unprecedented," noting that the Senate had never before transferred a president's appointment power in comparable circumstances to an unknown successor.

Washington's Warning Against Partisan Politics

28. The Defendants argued that the Democrats had at least contemplated a similar tactic back in 1992, when Obama's vice president, Joe Biden, was chairman of the Senate Judiciary Committee and mused about urging President George H.W. Bush to withhold any nominees to the high court until the end of the "political season." At the time, the Senate had just been through a bruising battle over the 1991 confirmation of Justice Clarence Thomas. As it happened, no vacancy occurred in 1992. Nonetheless the Defendants and others referred to the "Biden Rule" to justify the blockade of Garland.

29. On January 23, 2016, a presidential candidate said in a campaign rally at Sioux Center, Iowa, "I could stand in the middle of Fifth Avenue and shoot somebody, and I would not lose any voters." No presidential candidate ever made a statement as outrageous as such in America's history. However, such statement remained a political rhetoric under the First Amendment, and so was Biden's comment in 1992.

30. However, if any individual actually stands in the middle of Fifth Avenue and shoots someone, then this person shall certainly be subject to the full extent of the law, and would not be allowed to blame anyone else for his own crime. By the same logic, since the Defendants have actually committed such egregious act, they must be held accountable, and not allowed to blame Biden for their own unconstitutional act.

31. And history shows how disingenuous and hypocrite the Defendants were when they made up the so-called "Biden Rule". Biden's comment in its full context was never put in practice. In fact, it was under Biden's chairmanship for the Senate Judicial Committee, the Democratic-controlled Senate processed and confirmed President George H. W. Bush's (a Republican) two nominees, David Souter (90–9) in 1990 and Clarence Thomas (52–48) in 1991. In particular, Clarence Thomas who replaced Justice Thurgood Marshall represented a decisively swing of judicial philosophy. Nevertheless, disregarding any partisan power play, Biden fulfilled his constitutional duty and honored the

institutional traditions by ensuring the two Republican nominees received the long-standing confirmation process without delay which led to confirmation for both of them. The Defendants, instead, did exactly the opposite in disgrace, and then shamelessly blamed Biden for their obstruction.

32. Chief Judge Garland has been widely praised as a moderate. He was confirmed by a Republican-majority senate to the DC Circuit Court with support from a majority of Republican senators. In 2010, Senator Orrin G. Hatch said that he had urged Obama to nominate Garland as "a consensus nominee" who would win Senate confirmation. March 11, 2016 (five days before President Obama nominated Judge Garland), Senator Hatch said:

*The President told me several times he is going to name a moderate, but I do not believe him… [Obama] could easily name Merrick Garland, who is a fine man. He probably will not do that because this appointment is about the election. So I am pretty sure he will name someone the [liberal Democratic base] wants."*

33. However, after President Obama did nominate Garland in a sincere bipartisan gesture, the Defendants and their Republican colleagues reneged to choose the unprecedented obstruction. What the Defendants did was nothing but blatant abuse of power and hypocritical partisan politics.

34. On September 17, 1796, President Washington in his farewell address warned against political partisanship which place partisan interests above the Constitution and the country.

*However [political parties] may now and then answer popular ends, they are likely in the course of time and things, to become potent engines, by which cunning, ambitious, and unprincipled men will be enabled to subvert the power of the people and to usurp for themselves the reins of government, destroying afterwards the very engines which have lifted them to unjust dominion.*

35. What the Defendants and their Republican colleagues did in the Garland nomination was exactly what Washington warned against. They not only betrayed their duty to the Constitution, disregarded the founding fathers' intent, violated multiple constitutional principles and provisions, but also abandoned any sense of honesty and fundamental fairness. The Defendants knew very well that once the long-standing confirmation process started, they had no good reason to vote NO to Chief Judge Garland whom they had praised, advocated, and voted YES before. Therefore, they had to resort to

the darkest Machiavellianism, winning by any means at any cost, even if at the expense of honesty, fairness, decency, the Constitution and the common good of the country.

36. If Washington's warning is ignored, if such abhorrently unconstitutional action is allowed to go unaccountable, this is how a constitutional democracy fails and the rule of law ends.

### THE DEFENDANTS HAVE VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS

1. By denying the Due Process to President Obama's nomination of Judge Garland, the Defendants violated the Plaintiff's constitutional rights with respect to Equal Privileges and Immunities Clause, the Freedom of Speech guaranteed by the First Amendment, the Due Process guaranteed by the Fifth Amendment, and the fundamental voting right guaranteed by the Fourteenth Amendment.

Violation of Article IV § 2 - Equal Privileges

2. The Article IV § 2 mandates that every Citizen shall be entitled to the same Privileges and Immunities as all other Citizens. The right to choose a president who will exercise the executive power and duty on behalf of voters is one of the fundamental privileges. By denying the confirmation process to Chief Judge Garland, the Defendants violated such privilege and right of the majority voters – including the Plaintiffs - who voted for President Obama in 2012.

3. The Senate as one of the government branches mandated by the Constitution belongs to and serve all Americans, rather than a private club catering for one particular group of people. Article I § 6 requires that all senators - paid for by all taxpayers including the Plaintiffs - give their oath to follow and defend the Constitution as mandated in Article VI Par. 2 & 3. Hence all senators are required by the Constitution to do their job by following the well-established long-standing processes that safeguard equal privileges and rights for all Americans. Performing the conformation process for the

Garland nomination was one of such constitutional duties in service for all Americans. In any company, no employee is allowed to refuse to do a task assigned to him/her. By the same logic, no senator should be allowed to pick and choose which constitutional duty to perform.

4.  In this case, it was the Defendants whose deliberate partisan obstruction of a presidential nomination that abridged a majority of Americans' fundamental privilege and right to vote in electing a president who in turn carry out on their behalf the executive power including nomination.


Violation of Freedom of Speech – The First Amendment

5.  The First Amendment prohibits any law – and any government action - that abridges the Freedom of Speech. Casting a ballot is the most sacred form of speech by every citizen. The complete refusal of confirmation process to a nomination by a duly elected president represents (1) a suppression of the will of the majority voters who voted for President Obama who had a second 4-year term defined by the Constitution, and (2) a debasement of the majority of Americans' voice and expression in the 2012 Election for the direction of the Court, hence violating our Freedom of Speech.


Violation of Due Process – The Fifth Amendment

6.  The Fifth Amendment guarantees NO American shall be deprived of life, liberty, or property without due process of law. The guaranty of Due Process demands laws and government actions shall not be unreasonable, arbitrary or capricious. The Defendants and their Republican colleagues ignored the Garland nomination explicitly because he was nominated by a Democratic president who was elected twice by an absolute majority of voters. The Defendants' message essentially means they would hold confirmation process only for nominees from a president of the same party. In so doing, the Defendants not only violated the Due Process owed to the Office of the Presidency and Chief Judge Garland, but also violated the Due Process guaranteed for all voters including the Plaintiffs based on the outcome of the 2012 Election under the Constitution.

7. When a citizen applies for passport or driver license, the State Department or DMV has a duty to process such application, and may in some cases reject such application under certain criteria after careful review. However, it would be a dereliction of duty and violation of due process for the agency to ignore any particular application, and it would be even unlawful to brush aside an application based on any account, such as gender, religion, race, ethnicity, sexual orientation, etc.

8. The Supreme Court ultimately belongs to and serve justice for all Americans. There is no justification for the long-standing confirmation process to be accorded to presidential nominees of only one particular party but not another party. Such arbitrary and capricious partisan obstruction illustrates a severe violation of the Fifth Amendment that protects all Americans.

9. For police officers, fire fighters, doctors and nurses, it is their duty to protect all residents in a local community and care for all patients in hospital regardless of any account. Doing nothing when a 911-call or a patient comes from a particular neighborhood is discriminatory and unlawful.

10. Being one of the two chambers of the national legislature, every senate action carries the effect of laws and regulations on all Americans. While the final outcome of a particular senate action may not be universally agreeable to all Americans, its process must be transparent, consistent, fair, open, and thorough, rather than opaque, capricious, partisan, hidden, and arbitrary.


Violation of Equal Voting Right – The Fourteenth Amendment § 2

11. America was founded upon a set of ideals enshrined by the Declaration of Independence:

    a. Liberty & Equality: "*all men are created equal with certain unalienable rights*";

    b. Republic: "*That to secure these rights, Governments are instituted among Men*";

    c. Democracy: "*Deriving their just powers from the consent of the governed*".

12. The Constitution starts with "*We the People*". For the principle of "all men are created equal" to hold true, there must be equal respect of human dignity. And nothing manifests human dignity more than

a free person's sacred vote. America is a representative democracy. Voters choose a candidate whose policy agenda and judicial nominations they agree with the most. One in five voters told CNN in an exit poll that the Supreme Court was one reason they had cast a ballot. President Obama was in the position to nominate Chief Judge Garland because 51.1% of voters voted for him in the 2012 Election.

13. The Fourteenth Amendment § 2 further mandated the right to vote at any election including president shall not be abridged in any way. Claiming voters should decide the direction of court in election year as an excuse for a complete refusal of conducting the long-standing confirmation process for the Garland nomination, the Defendants essentially subverted and overturned the will of the majority voters in the 2012 Election whose outcome determined the course for the next four years according to the Constitution. In effect, the Defendants abridged the will of majority voters including the Plaintiff by almost a year in this case.

## THE PLAINTIFF HAS THE STANDING TO SUE

1. On November 17, 2016 U.S. District Judge Rudolph Contreras dismissed a lawsuit against Senator McConnell seeking to compel a vote on the nomination, finding that the plaintiff, who had simply alleged he was a voter, had no standing to sue. The most important issue among others in this case concerns the Due Process. Here is one of the well-established long-standing practices in our constitutional representative democracy that all voters have come to expect:

   1) Voters elect a president =>

   2) the President nominates a candidate to the Court =>

   3) the Senate conducts confirmation process to provide Advice and Consent.

2. Indeed, President Obama and Chief Judge Garland should have filed a lawsuit to assert their right to Due Process and defend the Constitution. However, their failure to do so does not negate the Plaintiff's standing to assert  constitutional rights, chiefly among them, the Due Process, because (1) the Plaintiffs as well as all voters participated in the aforementioned 3-step process that includes the

confirmation process, (2) the Plaintiffs as well as all Americans will bear the consequence resulted from the Defendants' obstruction for decades to come, and (3) the Plaintiffs are entitled, as much as President Obama and Chief Judge Garland, to the fairness of this process. The Defendants and their Republican colleagues deprived of the Due Process that ensures fundamental fairness for all voters including this Plaintiff.

3. Writing for the Court in *Paul v. Davis*, 424 U.S. 693 (1976) Justice Rehnquist established that "*we have repeatedly ruled that the procedural guarantee of the 14th Amendment apply whenever the State seeks to remove or significantly alter that protected status*". The long-standing confirmation process accorded to all previous nominees of both parties has become an integral part of a constitutional power for the presidency, a constitutional duty for the Senate, and a constitutionally protected entitlement for all Americans after casting their vote for a president. This Plaintiff's standing before the court is therefore guaranteed by the Due Process clause and has been repeatedly affirmed by the Court's previous decisions.

4. Alexander Hamilton, one of the founding fathers, wrote in "The Federalist, No. 78" that protection of individual rights requires judicial review.

   *Individual rights "can be preserved in practice no other way than through the medium of courts of justice, whose duty it must be to declare all acts contrary to the manifest tenor of the Constitution void."*

5. The First Amendment guarantees every American's right to petition for a redress of grievances, such as violating numerous constitutional rights, chiefly the Due Process in this case, of this Plaintiff and the majority of Americans. If the claim of lack of standing is accepted, then this part of the First Amendment would not even be worth of the paper it is printed on.

6. The Defendants will likely make a motion to dismiss my case claiming lack of injury-in-fact. As we all know, elections have consequence, and court decisions have enormous impact on all Americans. The fact that the Defendants and their Republican colleagues took such unprecedented obstruction

to deprive President Obama of his nomination clearly demonstrated the profound consequence - as long-lasting as decades to come - of their partisan obstruction. It would be another height of dishonesty for the Defendants to then turn around and argue no jury in fact for the majority of voters including the Plaintiff. If the Defendants were to be taken at their words that there is no injury-in-fact, that having the confirmation process of Judge Garland does not matter one way or the other, why had the Defendants come out to refuse holding confirmation hearing even before President Obama made known his nominee? Having Justice Neil Gorsuch instead of Justice Garland has profound consequences for decades to come, a very real and concrete injury to Plaintiffs who have exercised his constitutional rights to elect President Obama.

7. The "injury-in-fact" criteria may be appropriate for bodily harm or monetary loss, but it should not be applicable in cases where constitutionally protected rights are involved.  As Dr. King said, "Injustice anywhere is a threat to justice everywhere." When a person's human dignity was deprived of during slavery, a woman's right to vote was denied before 1919, a black student's equal protect was denied before the Brown decision in 1954, a man's due process is violated before the Miranda decision in 1966, how can anyone measure such injustice in monetary terms?

8. The Defendants' attorney also likely claims Plaintiff's injury is widely shared by the vast majority of Americans, hence not "particularized". Such "widely-shared-hence-no-standing" legal reasoning means if a harm is imposed upon and shared by a large population, then no one in this population has standing to sue.

9. First of all, many authoritarian regimes have employed such perverse logic to oppress their people into silence, and crack down anyone who dares to challenge. This Plaintiff believes our country – "a Shining City on a Hill" - is better than this.

10. Secondly, such argument clearly contradicts with multiple Supreme Court decisions and at least one circuit court decision.

a.  *U.S. v. SCRAP* 412 US (1973) ruled that…
    "To deny standing to persons who are in fact injured simply because many others are also injured, would mean that the most injurious and widespread Government actions could be questioned by nobody."

b.  *FEC v. Akins* (1998) ruled that…
    "an injury widely shared does not, by itself, automatically disqualify an interest for Article III purposes.  Such an interest, where sufficiently concrete, may count as an 'injury in fact… [W]here a harm is concrete, though widely shared, the Court has found injury in fact".

c.  In *Covington v. Jefferson County* (2004) the Ninth Circuit reversed a lower court ruling, and affirmed the plaintiff's standing to sue…
    "the most recent Supreme Court precedent appears to have rejected the notion that injury to all is injury to none for standing purposes… Instead, recent precedent holds that a generalized injury, by itself, is no bar to standing."

d.  *Mass. v EPA* (2007) ruled that…
    "to deny standing to persons who are in fact injured simply because many others are also injured, would mean that the most injurious and widespread Government actions could be questioned by nobody."

e.  In fact, the Supreme Court has repeatedly affirmed Plaintiff's standing to assert their fundamental rights such as equal protection in *Brown v. BoE* (1954) for blacks, privacy in *Roe v. Wade* (1973) for women, and marriage equality in *Obergefell v. Hodges* (2015) for gays and lesbians, thereby rejecting the argument of "widely-shared-hence-no-standing".

f.  In addition, *Lujan v. Defenders of Wildlife* (1992) recognized procedural right in its Footnote 7:

    *"procedural rights are special: the person who has been accorded a procedural right to protect his concrete interest can assert that right without meeting all the normal standards for redressability and immediacy." The right to vote is the constitutional "concrete interest", and the equal treatment of every vote in elections is part of the procedural rights that protect such constitutional "concrete interest".*

11. This Plaintiff's lawsuit is to assert – among other constitutional rights - such procedural right, i.e. the Due Process that has been well-established  for every presidential nomination whose outcome will have profound impact on all Americans including this Plaintiff in decades to come.

## THE COURT HAS THE POWER AND DUTY TO REDRESS

1.  The Defendants will likely claim (1) the issue involved is a so-called political question and (2) the Court has no jurisdiction over a congressional act.

2. The U.S. Const. Article III § 1 declares that the judicial Power of the United States shall be vested in one supreme Court. The U.S. Const. Article III § 2 further provides that the judicial Power shall extend to all Cases related to the Constitution and actions by the U.S. government.

3. *Marbury v. Madison*, 5 U.S. 137 (1803) established that the Court has the absolute power to review all acts of Congress where constitutionality is at issue, judge whether they abide by the Constitution, and rule that a law "repugnant to the Constitution is void."

4. Most of all, *Cotting v. Godard*, 183 U.S. 79 (1901) declared the Court's highest duty is to enforce the Constitution (body and letter) rooted from the Declaration of Independence (thought and spirit):

   *No duty rests more imperatively upon the courts than the enforcement of those constitutional provisions intended to secure that equality of rights which is the foundation of free government.*

5. The Court has the duty and power to recognize the fact that the Defendants have deliberately neglected their constitutional duty, violated the numerous constitutional principles and provisions outlined above, particularly, every American's right to Due Process embedded and well-established in a presidential appointment and nomination process.

6. The redress that this Plaintiff is seeking is simply for the Court to declare that the Defendants action with respect to the Garland nomination is unconstitutional for the reasons presented above.

## CONGRESS HAS THE POWER AND DUTY TO RECTIFY

Once the Defendants action is declared unconstitutional, Congress has the duty under the Article VI Par. 2 & 3, and the power under the Article I § 1 and Article I § 5 to take rectifying actions as follows:

1. The Senate shall censure the Defendants who in turn shall make public apology to the Office of Presidency, President Obama, Chief Judge Merrick Garland, and the American people.

2. Congress shall pass a law to codify the confirmation process for all future nominations to ensure every nominee is accorded the same equal due process of "Advice and Consent" that is fair, open, thorough and timely regardless of any account including party affiliation.

3. Just like any evidence illegally obtained is not admissible in the court of law, the occupant of the vacancy that was kept open through unconstitutional action shall voluntarily vacate from the seat, and that occupant shall also recuse himself from this case. Alternatively, …

4. Just like the punitive damages for gross negligence, the next Democratic President will be allowed to make two nominations in the mode of Chief Judge Garland to the Supreme Court to restore the balance at the Court that would have had the Garland nomination was allowed to proceed through the well-established and long-standing confirmation process.

## CONCLUSION

1. Were our founding fathers alive today, they would undoubtedly be horrified by what the Defendants did to the Garland nomination.

2. In conclusion,

   1) the Court has the power and duty to declare the Defendants' deliberate obstruction with respect to the Garland nomination unconstitutional, and

   2) the current Congress has the power and duty to immediately take rectifying actions as outlined above.

   3) if the current Congress refuses to take corrective actions, the Defendants shall be held contempt of the Court and the Constitution.

**Dated: March 15, 2019**

                                        **Respectfully submitted,**

                                          /s/ *yuxi liu*
                                        Yu-Xi (Glen) Liu, Esq. (yl3022)
                                        Attorney for Plaintiffs, (347)721-1383
                                        602 39th Street, Brooklyn, NY 11232